**MUNICIPALITY OF ANCHORAGE, et al., Plaintiffs,**

**and**

**The City of Craig, Alaska and the City & Borough of Sitka, Alaska, Plaintiffs–Appellants,**

**v.**

**UNITED STATES of America, et al., Defendants–Appellees.**

**MUNICIPALITY OF ANCHORAGE; Arco Alaska, Inc.; Doyon, Ltd., an Alaska Native Corp.; Arctic Slope Regional; State of Alaska; Fairbanks North Star Borough, Plaintiffs–Appellants,**

**v.**

**UNITED STATES of America; William K. Reilly, Administrator, U.S. Environmental Protection Agency; Michael P.W. Stone, U.S. Dept. of the Army; Lajuana S. Wilcher, Ass't Administrator for Water, United States EPA; Robie G. Russell, Administrator, United States EPA, Region X; Robert W. Page, Ass't Secretary of the Army, Civil Works; William W. Kakel, District Engineer United States Army Engineer District, Alaska, Defendants–Appellees.**

Nos. 91–35321, 91–35643.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 1992.

Decided Dec. 9, 1992.

**1322**

James S. Burling, Pacific Legal Foundation, Anchorage, Alaska, Ronald A. Zumbrun and Robin L. Rivett, Pacific Legal Foundation, Sacramento, Cal., for plaintiffs-appellants.

James N. Reeves and K. Adam Kroloff, Bogle & Gates, Anchorage, Alaska, for appellant ARCO Alaska, Inc.

J. Carol Williams and Blake A. Watson, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before: WRIGHT, CANBY, WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Plaintiffs challenge the district court's dismissal of their claims that the Environmental Protection Agency (EPA) and the Army Corps of Engineers (the Corps) violated the Administrative Procedure Act (APA) and the National Environmental Policy Act (NEPA) in adopting a Memorandum of Agreement (MOA). The district court dismissed plaintiffs' claims on defendants' motion. We affirm.

## BACKGROUND

Section 404(b)(1) of the Clean Water Act (CWA) requires the Administrator of the EPA, in conjunction with the Secretary of the Army, to develop guidelines for the issuance of dredge and fill permits. 33 U.S.C. § 1344(b)(1) (1988). Pursuant to that section, the EPA promulgated dredge and fill permit guidelines in 1980, and the Corps adopted similar guidelines that were later revised in 1986.

In November, 1989, the EPA and the Corps signed an MOA, setting forth the policy and procedures to be used in determining the type and level of mitigation that would be required to comply with section 404(b)(1) guidelines. The purpose of the MOA was to provide guidance to field personnel in the exercise of their discretion under the guidelines, thereby making permit decisions more consistent and predictable. Because the EPA and the Corps were convinced that the MOA was either an interpretation of the existing guidelines or a general policy statement and therefore exempt from the procedural requirements of 5 U.S.C. § 553, the MOA was adopted and published without the notice and comment period required for rulemaking under the Administrative Procedure Act (APA). See 5 U.S.C. § 553 (1988). In addition, because the EPA and the Corps believed that the MOA was exempt from the requirements of NEPA, they did not prepare an environmental impact statement (EIS) or otherwise comply with NEPA in adopting the MOA. See 42 U.S.C. § 4332 (1988).

Plaintiffs filed lawsuits alleging that adoption of the MOA violated 5 U.S.C. §§ 553 and 706 and 42 U.S.C. § 4332. After the district court consolidated the cases, EPA and the Corps moved to dismiss the claims. Plaintiffs also moved jointly for summary judgment. The district court granted the EPA and the Corps' motion to dismiss, holding that the case was not ripe for adjudication. Plaintiffs appeal from that dismissal. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## DISCUSSION

Plaintiffs raise three issues on appeal. First, they contend that their APA challenges to the adoption of the MOA are ripe. Second, they argue that the MOA, in fact, violated the APA. Finally, they maintain that the EPA and the Corps failed to follow certain procedures required by NEPA in adopting the MOA.

### I. Ripeness of Plaintiffs' APA Claims

■ The first issue we address is the ripeness of plaintiffs' APA claims. Ripe-

ness for federal adjudication being a question of law, we review the district court's decision *de novo*. *See Southern Pac. Transp. Co. v. Los Angeles*, 922 F.2d 498, 502 (9th Cir.1990) (citing *Hoehne v. San Benito*, 870 F.2d 529, 531 (9th Cir.1989)), *cert. denied*, —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991).

■ The Supreme Court has indicated that ripeness is to be determined by the application of a two prong test. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967). In *Abbott*, the Court held that we must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.; see also Assiniboine & Sioux Tribes v. Board of Oil & Gas Conservation*, 792 F.2d 782, 788 (9th Cir.1986). "[R]ipeness will prevent review if the systemic interest in postponing adjudication due to lack of fitness outweighs the hardship on the parties created by postponement." *Chavez v. Director, OWCP*, 961 F.2d 1409, 1414 (9th Cir.1992) (citations omitted).

## A. Fitness for Review

■ We will determine first the fitness for judicial review of plaintiffs' claim that the EPA and the Corps violated the notice and comment requirement of the APA. *See* 5 U.S.C. § 553 (1988). Generally, agency action is fit for review if the issues presented are purely legal and the regulation at issue is a final agency action. *Abbott*, 387 U.S. at 149, 87 S.Ct. at 1516; *see also Assiniboine & Sioux Tribes*, 792 F.2d at 789 ("Review is not premature if the agency action is final, and is 'purely legal.'" (quoting *Abbott*)). However, the Supreme Court has indicated that there are instances when a purely legal challenge to a final agency action will not be considered ripe. In *Toilet Goods Association v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), decided the same day as *Abbott*, the Court held that a legal challenge to final agency action was not ripe because "judicial appraisal ... is likely to stand on much surer footing in the context

of a specific application of th[e] regulation...." *Id.* at 164, 87 S.Ct. at 1524; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891, 110 S.Ct. 3177, 3190, 111 L.Ed.2d 695 (1990) (indicating that agency regulations are not ordinarily ripe for review until the "factual components [have been] fleshed out, by some concrete action applying the regulation...."); *Trustees For Alaska v. Hodel*, 806 F.2d 1378, 1381 (9th Cir.1986) (stating that agency action is fit for review if further factual development is not required).

■ In this case, the parties agree that the challenge to the MOA presents purely legal issues. We agree. However, whether the MOA is a final agency action is less clear. Just before oral argument in this case, President Bush proposed an amendment to the MOA that would change the agencies' position substantially if adopted. The proposed amendment raises question as to whether the MOA can be characterized as a "definitive statement" of any agency's position. *See Mt. Adams Veneer Co. v. U.S.*, 896 F.2d 339, 343 (9th Cir.1990) ("Indicia of finality include: the administrative action challenged should be a definitive statement of an agency's position; the action should have a direct and immediate effect on the day-to-day business of the complaining parties; ... immediate compliance should be expected...."). Nevertheless, the parties agree that the MOA is a final agency action. In light of the government's concession, we will assume, without ruling on the question, that the MOA is final agency action for purposes of deciding the ripeness of plaintiffs' APA claims. Plaintiffs' appeal focuses on the district court's determination that "judicial appraisal is likely to stand on a much surer footing in the context of a specific application" of the MOA. We agree with the district court.

The issue underlying our ripeness inquiry is whether the MOA was adopted in violation of the notice and comment requirement of the APA. *See* 5 U.S.C. § 553 (1988). Plaintiffs argue that because the MOA is a binding, substantive rule, it is subject to the notice and comment require-

ments of 5 U.S.C. § 553. They insist that language in the MOA firmly establishes that it is intended to be a binding, substantive norm that changes the existing guidelines. Plaintiffs point to language in the MOA stating that it *"must* be adhered to" and that it *"will* [be] use[d] . . . when making . . . determination[s] of compliance with the Guidelines. . . ." *See Memorandum of Agreement between EPA and the Corps* 1 (Feb. 6, 1990) (emphasis added). In addition, they contend that the MOA eliminates the Corps discretion, imposing a mandatory compensatory mitigation requirement pursuant to the no net loss policy.

The EPA and the Corps, on the other hand, maintain that the MOA is exempt from the notice and comment requirements because it is either an interpretation of the existing guidelines or a general policy statement. In support of their position, the EPA and the Corps cite language in the MOA suggesting that it is intended to interpret the guidelines and provide guidance to, not bind, the Corps in the consideration of individual permit applications. The EPA and the Corps direct our attention to the following excerpt from the MOA:

> "This MOA . . . is written *to provide guidance* for agency field personnel on the type and level of mitigation which demonstrates compliance with requirements in the Guidelines. The policies and procedures discussed herein are consistent with current Section 404 regulatory practices and are provided in response to questions that have been raised about how the Guidelines are implemented. The MOA *does not change the substantive requirements of the Guidelines.* It is *intended to provide guidance regarding the exercise of discretion* under the Guidelines."

*Id.* (emphasis added).

The EPA and the Corps also point out that the MOA's "no net loss policy," which plaintiffs contend represents a substantive change in policy because it "narrowly limits" the Corps' previously broad discretion, is flexible and far from mandatory. They point to language in the MOA stating that:

> [M]itigation *should* provide, at a minimum, one for one functional replacement (i.e., no net loss of values), with an adequate margin of safety to reflect the expected degree of success associated with the mitigation plan, *recognizing that this minimum requirement may not be appropriate and practicable, and thus may not be relevant in all cases. . . .*

*Id.* at 5 (emphasis added).

Alternatively, the EPA and the Corps contend that the notice and comment issue is not ripe. They argue that until the MOA is applied to a particular permit application, the court cannot determine whether the MOA is substantive and therefore subject to the procedural requirements of the APA or interpretive and therefore exempt from the APA. *See Linoz v. Heckler,* 800 F.2d 871, 877 (9th Cir.1986) ("[O]nly substantive rules are subject to the APA."). The district court agreed with the EPA and the Corps that it could not, or at least should not, make the determination until the MOA is applied to a specific permit application. Again we agree with the district court.

In *Mada–Luna v. Fitzpatrick,* 813 F.2d 1006 (9th Cir.1987), this court considered the question of what distinguishes a substantive rule from a general policy statement. The court stated:

> When a federal agency issues a directive concerning the future exercise of its discretionary power, for purposes of APA section 553, its directive will constitute either a substantive rule, for which notice-and-comment procedures are required, or a general statement of policy, for which they are not. The critical factor to determine whether a directive announcing a new policy constitutes a rule or a general statement of policy is "the extent to which the challenged [directive] leaves the agency, or its implementing official, free to exercise discretion to follow, or not to follow, the [announced] policy in an individual case."
>
> To the extent that the directive merely provides *guidance* to agency officials in exercising their discretionary power while preserving their flexibility and

their opportunity to make "individualized determination[s]," it constitutes a general statement of policy.... In contrast, to the extent that the directive "narrowly limits administrative discretion" or establishes a *"binding norm"* that "so fills out the statutory scheme that upon application one need only determine whether a given case is within the rule's criterion," it effectively replaces agency discretion with a new "binding rule of substantive law."

*Id.* at 1013–14 (emphasis added and citations omitted); *see also Public Citizen, Inc. v. U.S. NRC,* 940 F.2d 679, 681–82 (D.C.Cir.1991) ("In determining whether an agency statement is a substantive rule, which requires notice and comment, or a policy statement, which does not, the ultimate issue is 'the agency's intent to be bound.' " (quoting *Vietnam Veterans of America v. Secretary of the Navy,* 843 F.2d 528, 538 (D.C.Cir.1988))).

Examining the language of the MOA, it is not at all clear that the EPA and the Corps intend to be bound by the document. On the other hand, one cannot state without reservation that the agencies do not intend to be bound. The MOA seems to send mixed messages as to the binding intent of the agencies in its adoption. In a situation such as this, we are convinced that the better course is to withhold court review.

Our conclusion parallels the decision of the D.C. Circuit in *Public Citizen.* There, a group of citizens challenged a policy statement of the Nuclear Regulatory Commission, alleging that it was a "substantive rule adopted in violation of the Administrative Procedure Act's notice and comment requirements." *Public Citizen,* 940 F.2d at 680. The court held that both the substantive and procedural challenges were not ripe.

The statements' own signals being in conflict, only Commission practice under the policy can make the issue determinable and thus fit for review. At times we have resolved the sort of claim presented here—that a purported policy statement was really a rule invalid for want of notice and comment—even before agency application.... *Bowen*[, however,] suggests the hazard ·in resolving such a challenge where the pre-application materials are inconclusive.... Where we believe[ ] the agency's practical application of a statement would be important, we have found the issue not ripe.

*Id.* at 683 (citations omitted).

Plaintiffs' APA challenges present a nearly identical situation. As indicated above, the language of various portions of the MOA conflicts. Thus, we conclude that only agency action under the MOA "can make the issue determinable and thus fit for review." *Id.* It is clear to this court that the judicial process will clearly gain by waiting for a concrete application of the MOA.

The basic rationale for the ripeness doctrine further bolsters our conclusion that plaintiffs' § 553 claim is not presently fit for review. The Supreme Court has stated that the ripeness doctrine exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties." *Abbott,* 387 U.S. at 148–49, 87 S.Ct. at 1515. Compelled by this rationale and clear controlling authority, we find that plaintiffs' § 553 claim is not fit for review.

### B. Hardship to the Parties

Now that we have concluded that plaintiffs' § 553 challenge is not fit for review, *Abbott*'s ripeness test requires that we consider whether withholding court consideration will inflict any hardship on plaintiffs. While plaintiffs insist that withholding review of the MOA will impose serious hardships on them, we are unconvinced that it will inflict the kind of hardship that compels immediate review.

This court has indicated that under the "traditional hardship· prong, it must be shown that withholding review of the issue

would result in direct and immediate hardship and would entail more than possible financial loss." *Chavez,* 961 F.2d at 1415. The D.C. Circuit has also stated that " 'for an institutional interest in deferral to be outweighed, postponing review must impose a hardship on the complaining party that is *immediate, direct,* and *significant.*' "[1] *National Ass'n of Reg. Util. Com'rs v. Dept. of Energy,* 851 F.2d 1424, 1429 (D.C.Cir.1988) (citation omitted and emphasis added).

Here, plaintiffs have failed to show that they will suffer any immediate, direct, or significant hardship. It is uncontested that the MOA imposes no present, affirmative duties on plaintiffs, requires no immediate changes in plaintiffs' conduct, and does not impact, in any way, plaintiffs' day-to-day affairs. Plaintiffs' most persuasive hardship argument is their contention that the MOA will impact local development significantly. Plaintiffs fail to recognize, however, that "mere potential for future injury" does not overcome the interest of the judiciary in delaying review. *Id.* (citation omitted); *see Toilet Goods Ass'n,* 387 U.S. at 164–65, 87 S.Ct. at 1525; *Chavez,* 961 F.2d at 1415; *American Trucking Ass'ns, Inc. v. ICC,* 747 F.2d 787, 790 (D.C.Cir.1984) (finding no hardship because the "present policy statement neither imposes any obligation upon these petitioners, nor in any other respect has any impact upon them 'felt immediately … in conducting their day-to-day affairs.' "). *But see State of Nevada v. Herrington,* 777 F.2d 529, 535 (9th Cir.1985) (holding that guidelines intended to assist field offices imposed direct and immediate hardship on party challenging the action). Courts have consistently held that hardship tips the balance in favor of review only when the regulation has a direct and immediate impact on those subject to it in conducting their "day-to-day affairs," when it affects "primary conduct," or when "irremediable adverse con-

sequences flow from requiring a later challenge." *Toilet Goods,* 387 U.S. at 164, 87 S.Ct. at 1525. Simply stated, plaintiffs have failed to demonstrate any hardship that outweighs our and the agencies' interest in delaying review.

### C. Ripeness of Plaintiffs' § 706 APA Challenge

■ Plaintiffs also argue that the EPA and the Corps have violated 5 U.S.C. § 706(2)(A) by failing to adhere to the requirements of two executive orders. While we hold that this claim is also not ripe, we treat it separately because the ripeness analysis differs slightly from that outlined above—it does not turn on a distinction between substantive and interpretive agency statements.

Plaintiffs' § 706 claims are ultimately based on the contention that the EPA and the Corps violated two executive orders requiring them to prepare a "takings implications assessment" and a "regulatory impact analysis." *See* Exec. Order No. 12,-630, 53 Fed.Reg. 8859 (1988); Exec. Order No. 12,291, 46 Fed.Reg. 13,193 (1981). The government argues that neither of these executive orders gives rise to a private right of action, through APA or otherwise. We do not reach that question, however, because we are convinced that even if the plaintiffs were entitled to enforce the requirements, their action is premature.

Executive Order 12,630 requires federal agencies to assess the implications of "policies that have takings implications" or "could effect a taking." *Id.* at § 2(a). Executive Order 12,291 requires a regulatory impact analysis "in connection with every major rule." *Id.* at § 3(a). Unfortunately, whether the MOA has takings implications or constitutes a major rule are determinations that cannot be made intelligently on the bare record before us. We do not

---

1. While the quoted language specifically addressed petitioners' substantive challenge to the agency action, the court indicated that its analysis applied with equal force to the petitioners' APA procedural challenge. The court stated:
 [T]he Court has a genuine interest in postponing review of petitioners' procedural claim,

too. And once again, the petitioners face no hardship from delay…. Accordingly, we find that the petitioner's procedural claim is not now ripe for separate review.
*National Ass'n of Reg. Util. Comm'rs v. Dep't of Energy,* 851 F.2d 1424, 1430 (D.C.Cir.1988).

know and cannot discern from the record what operative effect the MOA has. If it is a mere guide to the flexible exercise of discretion within already existing boundaries, the MOA itself may not have takings implications and, almost certainly, would not be a major rule. On the other hand, if the MOA is as binding as plaintiffs assert, it might trigger one or the other of the requirements imposed by the two executive orders. With no application of the MOA in the record, these issues cannot be resolved. As with plaintiffs' § 553 claims, judicial appraisal of the § 706 claims will stand on much surer footing in the context of a specific application of the MOA. *See Toilet Goods*, 387 U.S. at 164, 87 S.Ct. at 1524. We conclude that plaintiffs' claims under § 706, like their claims under §· 553, are not ripe. As we have already demonstrated, withholding decision causes plaintiffs no undue hardship. Accordingly, the district court did not err in dismissing all of plaintiffs' claims.

Our conclusion that plaintiffs' APA claims are not ripe for review prevents us from reaching plaintiffs' contention that the EPA and the Corps violated 5 U.S.C. §§ 553 & 706. The substance of those claims can be heard at a future date when the case is ripe.

## II. NEPA Challenges to the MOA

■ We turn, then, to plaintiffs' NEPA claims. It is unclear from the opinion of the district court whether plaintiffs' NEPA claims were dismissed because they were not ripe or because plaintiffs had failed to state a claim on which relief could be granted. Because dismissal of the claims on either ground is a question of law, we review the district court's dismissal *de novo*. *Oscar v. University Students' Co-Op Ass'n*, 965 F.2d 783, 785 (9th Cir.1992); *Southern Pac. Transp. Co. v. Los Angeles*, 922 F.2d 498, 502 (9th Cir.1990) *cert. denied*, —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991).

Plaintiffs argue that the EPA and the Corps have failed to comply with certain requirements of section 102 of NEPA. *See* 42 U.S.C. § 4332 (1988). Specifically, they allege that the EPA and the Corps have failed to prepare an environmental impact statement (EIS) pursuant to section 102(C) of NEPA and that they have failed to consider alternatives as required by subsection (E) of section 102.

Despite the district court's failure to address directly plaintiffs' NEPA claims, we are convinced that the claims were properly dismissed. Therefore, we affirm the district court's dismissal and hold that plaintiffs' NEPA challenges to the adoption of the MOA are without merit because the MOA is exempt from NEPA requirements.

### A. EIS Requirement

■ Section 102(C) of NEPA requires that an EIS be prepared in connection with "major. Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C) (1988). Plaintiffs' contend that adoption of the MOA is just such "major Federal action." We disagree.

The MOA was adopted pursuant to the congressional mandate in section 404(b)(1) of the Clean Water Act (CWA) that the Administrator of the EPA develop guidelines, in conjunction with the Secretary of the Army, to govern the granting of dredge and fill permits pursuant to that section. 33 U.S.C. § 1344(b)(1) (1988). In section 511(c) of the CWA, Congress stated that "no action of the Administrator taken pursuant to the Act shall be deemed a major Federal action significantly affecting the quality of the human environment within the meaning of the National Environmental Policy Act of 1969." 33 U.S.C. § 1371(c) (1988). In other words, Congress carved out an exemption to NEPA for actions taken by the Administrator of the EPA pursuant to the CWA. In our view, the MOA clearly qualifies as action taken by the Administrator pursuant to the congressional directive in the CWA to develop guidelines under section 404(b)(1). As such, it clearly is covered by section 511's exemption and cannot be considered major federal action significantly affecting the quality of the human environment. As a result, the MOA is exempt from the EIS requirement of NEPA.

We reject plaintiffs' argument that the participation of the Corps in the adoption of the MOA somehow subjects the MOA to NEPA's EIS requirement. The MOA does not cease to be "action of the Administrator" merely because it was adopted and negotiated in conjunction with the Secretary of the Army and the Corps as directed by Congress. Congress created the exemption and intended that it apply to all actions of the Administrator taken pursuant to the CWA. The Corps' involvement in adopting the MOA does not affect the scope of the section 511 exemption. We hold that the MOA is exempt from NEPA's EIS requirement.

### B. Section 4332(E)

■ We turn, now, to the more difficult question: whether section 511 of the CWA exempts the MOA from the NEPA requirement to consider alternatives. We preface our resolution of this question with the recognition that determining the precise scope of section 511's exemption places this panel squarely on the horns of a dilemma. A complete exemption from NEPA requirements would enable EPA to act more expeditiously in fulfilling its purpose of protecting the environment. Thus, as has been recognized, completely exempting EPA from NEPA seems to "best serve[] the objective of protecting the environment which is the purpose of NEPA." *Portland Cement Ass'n v. Ruckelshaus*, 486 F.2d 375, 383 (D.C.Cir.1973), *cert. denied*, 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974). However, "it cannot be assumed that EPA will always be the good guy." *Id.* at 384 (citation omitted). Indeed, some have suggested that a complete exemption from NEPA requirements for EPA will result in no one policing the police. *Id.* Because we believe that this case does not present a situation in which no one is policing the police, we hold that adoption of the MOA did not violate 42 U.S.C. § 4332(E).

Plaintiffs argue that the express language of section 511 of the CWA exempts actions of the Administrator taken pursuant to the CWA only from the NEPA requirement to prepare an EIS. As indicated above, an EIS is required for "major feder-

al actions significantly affecting the quality of the human environment." Section 511, however, states that actions of the Administrator taken pursuant to the CWA will not be considered major federal action for purposes of NEPA. Plaintiffs argue that, taken together, these sections exempt the EPA only from NEPA's EIS requirement. They point out that NEPA's other requirements are not limited to major federal actions. They conclude that because section 511 of the CWA states only that the Administrator's actions will not be considered major federal actions pursuant to NEPA, a limitation required only to trigger the preparation of an EIS, EPA actions under the CWA are subject to NEPA's other requirements. While plaintiffs' argument seems persuasive on its face, we refuse to read the section 511 exemption so narrowly.

The EPA and the Corps, on the other hand, urge the court to hold that section 511 completely exempts all actions of the Administrator from any requirements imposed by NEPA. They cite considerable legislative history and the opinion of the EPA administrator at the time the CWA was enacted as conclusive evidence that Congress intended EPA to be free from all NEPA requirements for actions taken pursuant to the CWA. Generally, "we must show great deference to ... [EPA's] interpretation of the [Clean Water] Act[,]" especially where, as here, "the Agency's decision on the meaning or reach of the Clean Water Act involves reconciling conflicting policies committed to the Agency's care and expertise." *Rybachek v. E.P.A.*, 904 F.2d 1276, 1284 (9th Cir.1990); *see also EPA v. National Crushed Stone Ass'n*, 449 U.S. 64, 83, 101 S.Ct. 295, 307, 66 L.Ed.2d 268 (1980) (court must show great deference to the interpretation given to a statute by the officers or agency charged with its administration). Fortunately, we do not need to choose between the polar extremes offered by the parties to decide this case. Rather, we narrowly hold that in the circumstances of this case section 511's exemption is sufficiently broad to remove the MOA from the NEPA requirements in 42 U.S.C. § 4332(E).

This case presents a situation strikingly similar to that considered by the D.C. Circuit in *Portland Cement.* In holding that the EPA was exempt from the requirements of NEPA as they related to section 111 of the Clean Air Act, the court stated:

> What is decisive ultimately, is the reality that, section 111 of the Clean Air Act, properly construed, requires the *functional equivalent* of a NEPA impact statement....
>
> ... [Our decision] strike[s] a workable balance between some of the advantages and disadvantages of full application of NEPA.

*Portland Cement,* 486 F.2d at 384–86 (emphasis added).

We are convinced that here, as in *Portland Cement,* the duties and obligations imposed on the EPA by Congress under the CWA will insure that any action taken by the administrator under section 404(b)(1) will have been subjected to the "functional equivalent" of NEPA requirements. In the CWA, Congress instructs the EPA and the Corps to consider many of the same things that NEPA would require before adopting guidelines under section 404(b)(1). *Compare* 42 U.S.C. § 4332 (1988) *with* 33 U.S.C. §§ 1343(c) & 1344(b)(1) (1988) (note the similarity of the factors to be considered in these sections). In addition, we note that the Corps must perform an EIS and comply with the other requirements of NEPA when issuing a permit pursuant to the guidelines.

■ The purpose of NEPA is to ensure that federal agencies consider the environmental impact of their actions. Under the CWA, Congress has charged the Administrator of the EPA with the duty of cleaning up the nation's navigable waters. We are convinced that in the circumstances of this case an exemption from NEPA will facilitate the EPA's efforts to clean up the nation's waters while the statutory duties placed on EPA by Congress under the CWA properly ensure that the Agency will consider the environmental impact of its actions. In effect, Congress has policed the police and protected the environment. Plaintiffs' arguments urge us to adopt a novel interpretation of NEPA. They would have us hold that the EPA, the agency charged with protecting the environment, has violated NEPA, a statute designed to ensure that environmental considerations are weighed appropriately before federal agencies act, by interpreting its guidelines in a manner that is too protective of the environment. Because such a reading skews the logical intent of the statutes, we reject it. Subjecting the MOA to NEPA's requirements does not further the purposes of the CWA. Furthermore, it cuts against the weight of considerable authority, as we point out below. Therefore, we refuse to hold that the EPA and the Corps violated 42 U.S.C. § 4332(E) of NEPA in adopting the MOA.

Our conclusion is supported by the decisions of other courts in related cases. For example, courts have universally held that NEPA applies with less force to EPA than to any other federal agency. *See Portland Cement,* 486 F.2d at 379–87 (indicating that there was serious question whether NEPA applies to environmentally protective agencies at all, especially the EPA); *International Harvester Co. v. Ruckelshaus,* 478 F.2d 615, 650 n. 130 (D.C.Cir.1973) ("Although we do not reach the question whether EPA is automatically and completely exempt from NEPA, we see little need in requiring a NEPA statement from an agency whose *raison d'etre* is the protection of the environment and whose decision on suspension is necessarily infused with the environmental considerations so pertinent to Congress in designing the statutory framework.") In addition, another court has even suggested that when, as here, the EPA is excused from the requirement to prepare an EIS, it is "under no statutory duty to consider alternatives...." *See Webb v. Gorsuch,* 699 F.2d 157, 161 (4th Cir.1983). We hold, therefore, that the MOA is exempt from NEPA's requirements.

We conclude that the district court properly dismissed plaintiffs' claims. Therefore, the judgment is AFFIRMED.