ASSOCIATION OF AMERICAN
MEDICAL COLLEGES, et
al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CV 98–1734 CM (RCx).

United States District Court,
C.D. California.

April 28, 1998.

Mark E. Beck, Beck De Corso Daly Barrera & Kreindler, Los Angeles, CA, Leonard C. Homer, Matthew W. Nayden, Ober Kaler Grimes & Shriver, Baltimore, MD, Harry R. Silver, Ober Kaler Grimes & Shriver, Washington, DC, for plaintiffs.

Sheila M. Lieber, Dept. of Justice, Civ. Div., Washington, DC, Peter Robbins, U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

MORENO, District Judge.

### I.

### *FACTUAL BACKGROUND*

**A. Overview**

Plaintiffs in this action are the Association of American Medical Colleges, the American Medical Association, the American Hospital Association, and other organizations involved in the development of national policy affecting payment to medical teaching institutions and physicians ("Association Plaintiffs"); and several University of California Schools of Medicine, Loma Linda University Health-

care, Inc., and other teaching hospitals and institutions throughout the United States ("Non–Association Plaintiffs").

Defendant is the United States, acting through the Office of the Inspector General ("OIG"), the Department of Justice ("DOJ"), and the Department of Health and Human Services ("HHS").

In brief, Defendant is auditing the conduct of physicians at teaching hospitals (the "PATH" audits or initiative) by examining a sample of their billings between 1992 and 1996. Plaintiff alleges that in so doing, Defendant is imposing rules that were not promulgated in accordance with statutory requirements, or were not promulgated prior to the audit period. Plaintiffs further allege that if Defendant believes the rules have been violated, the entire teaching faculty are accused of violating the False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA"). Upon such a belief and accusation, Plaintiffs assert they are forced to choose between settling Defendant's claims or facing hundreds of millions of dollars in FCA damages and penalties.

Defendant argues that the Court lacks subject matter jurisdiction because Plaintiffs seek a premature and impermissible advisory opinion that would effectively put prosecutors engaged in pre-enforcement review on trial as defendants. The Court agrees that Plaintiffs have failed to establish subject matter jurisdiction over the claims asserted.

## B. The PATH Audits

Title XVIII of the Social Security Act of 1935, 42 U.S.C. §§ 1395 et seq., commonly known as the Medicare Act, establishes a federally subsidized health insurance program for the elderly and disabled. Part A of the Medicare Act provides insurance primarily for the costs of hospital and related post-hospital care and is funded by social security taxes. 42 U.S.C. §§ 1395c–1395i–4. Part B, which is at issue here, is a voluntary program that provides supplemental insurance to cover other health care costs, including physician services. 42 U.S.C. §§ 1395j–1395w–4. Physicians participating under Part B submit bills to Medicare carriers (usually insurance companies), which process claims on behalf of the Secretary of HHS (the "Secretary"). 42 U.S.C. § 1395u(a)(1). These bills are subject to auditing both by the carriers (under 42

U.S.C. § 1395u(a)(1)(C)) and the Inspector General of HHS (under 5 U.S.C.App. 3 §§ 4(a)(1), 2(1)).

Physicians who participate in the Medicare program are subject to a variety of sanctions if they receive payments based on false statements. First, they may be prosecuted for criminal violations. Second, the Attorney General may bring a civil action for damages and penalties pursuant to the FCA. Third, the Attorney General may refer the matter to the Secretary for possible administrative penalties and sanctions. *See* 42 U.S.C. §§ 1320a–7a(a), 1320a–7b(f)(1); 31 U.S.C. §§ 3801–3812. Finally, the Secretary may seek to reopen physicians' claims for payment and seek to recover past overpayment in an administrative recoupment proceeding. 42 U.S.C. § 1395gg(b); 42 C.F.R. § 405.841.

This cases arises from an audit initiative being conducted by the Office of Inspector General of HHS known as the "Physicians at Teaching Hospitals" or "PATH" audits. The purpose of the initiative is to "ensure that Medicare pays only once for the same medically necessary service, and that payment fairly reflects the level of service actually provided." (Testimony of Michael Mangano, Principal Deputy Inspector General of HHS, in Physicians at Teaching Hospitals (PATH): Hearing Before the Subcommittee on Labor, Health and Human Services, Education and Related Agencies of the Senate Committee on Appropriations, 105th Cong., 1st Sess. (Oct. 21, 1997) ("PATH Hearing") at 2.)

The PATH initiative is directed at two main concerns. The first is whether, in some cases, Medicare may have paid for "complex levels of treatment when the patient's medical record demonstrates that a lower level service was provided." (Mangano, PATH Hearing at 2.) This alleged practice is known as "upcoding." The second concern is whether some physicians have "billed Medicare for services actually performed by an intern or resident." (Mangano, PATH Hearing at 2.) This is referred to herein as the "personal direction" issue.

### 1. Upcoding

Plaintiffs assert that the Health Care Financing Administration ("HCFA"), together

with Plaintiff American Medical Association ("AMA"), promulgated *voluntary* documentation guidelines for physician evaluation and management ("E & M") services [1] that became effective in August 1995. Plaintiffs argue the E & M guidelines are not mandatory but were meant to provide guidance regarding documentation for coding of certain physician services, an issue that has not been expressly addressed by the HCFA or any other federal agency in binding regulations. Plaintiffs argue that determinations regarding "upcoding" are being made in the PATH audit process by improperly relying on, and in some cases applying retroactively, the E & M documentation guidelines.

### 2. Personal Direction by Physicians

Plaintiffs argue that in the PATH audit process, Defendant is adopting and seeking to enforce rules regarding the presence of physicians and documentation thereof that were issued by *carriers*, not the federal government. The Medicare Act, as amended in 1980, requires teaching physicians to provide

> sufficient personal and identifiable physicians' services to the patient to exercise full, personal control over the management of the portion of the case for which payment is sought [and] the services are of the same character as the services the physician furnishes to patients not entitled to benefits under this title . . .

42 U.S.C. § 1395u(b)(7). This statutory language essentially tracks the language of regulations promulgated in 1967, 20 C.F.R. § 405.521 (subsequently recodified as 42 C.F.R. § 405.521), and a letter to intermediaries issued by the Secretary in 1969 ("I.L. 372").[2]

Since 1980, several carriers have issued statements relating to the physical presence

and documentation requirements of § 1395u(b)(7), § 405.521, and I.L. 372. Plaintiffs argue that in some cases, these carrier communications improperly deviated from the requirements of the statutory and regulatory authorities.[3] In December 1995, the Secretary issued new regulations requiring the physical presence of teaching physicians during key portions of the medical service and requiring particular documentation in the patient's records of the physician's presence. 60 Fed.Reg. at 63,124. These regulations became effective on July 1, 1996. 42 C.F.R. § 415.172 et seq. (the "1996 regulations").

Defendant admits that the audits have targeted first those facilities that received clear guidance from carriers regarding documentation requirements on the theory that the existence of such guidance would provide additional evidence of the knowledge or intent element required in an FCA action. Defendant argues, however, that any FCA prosecution would be premised on alleged knowing violation of Section 1395u(b)(7), not carrier guidelines. Plaintiffs argue that the PATH audits are impermissibly applying unauthorized rules promulgated by carriers and retroactively applying the 1996 regulations [4] to establish billing improprieties and violations of the Medicare Act.

### 3. Enforcement

If suspected violations are found, the matter may be referred to the Attorney General for possible criminal or civil action. Plaintiffs argue that if the PATH audit finds that a teaching hospital faculty has not complied with unauthorized carrier rules, voluntary E & M documentation standards, or retroactively applied rules, the teaching physicians

---

1. E & M services typically involve obtaining the patient's relevant medical history, a physical examination, medical decision making, and counseling.

2. I.L. 372 also set forth a documentation requirement, mandating that performance of the services by the physician must be demonstrated by notes and orders in the patient's records that are either *written by or countersigned by* the supervising physician.

3. For example, some carriers stated that the teaching physician's medical direction must be

given in the presence of the patient at the time an intern or resident furnishes any patient services, or that the teaching physician's countersignature of the resident's note was not documentation of the teaching physician's services.

4. Defendant argues that this is a "misunderstanding," asserting that the audits are investigating compliance with rules that became effective on January 1, 1992 (*see* 56 Fed.Reg. 59,502; 42 C.F.R. § 405.521), not the 1996 regulations.

are forced to choose between "settling" the claims or facing prosecution under the FCA. To date, five PATH audits have been completed. Three cases have been resolved voluntarily. The other two cases did not involve any enforcement action.

## C. Plaintiffs' Complaint

Plaintiffs' First Amended Complaint (the "Complaint") raises numerous objections to the standards being employed by Defendant in the PATH audit process. Plaintiffs seek declaratory and injunctive relief to the effect that Defendant's actions are illegal because (1) the rules imposed in the PATH audits, and used as the basis for potential liability under the FCA, violate both the Administrative Procedure Act, 5 U.S.C. § 551 et seq. (the "APA"), and the Medicare Act; and (2) the PATH program, to the extent it is being used to coerce settlements under threat of an FCA prosecution, violates Plaintiffs' due process rights.

Plaintiffs argue that the rules at issue violate the APA and the Medicare Act because they consist of (1) unauthorized rules devised by carriers, not by a federal agency; (2) rules that are being applied retroactively to the audit period; (3) rules that HHS may have intended to be binding but which were neither promulgated as such nor communicated to those affected; and (4) guidelines which are being treated as binding rules but which were represented to be voluntary.

Plaintiffs argue the process violates the due process clause of the Fifth Amendment because the rules (1) apply to some facilities but not others; (2) rely ·on small samples to extrapolate overcharges, penalties and alleged false claims on a large scale; and (3) force facilities to face the prospect of hundreds of millions of dollars in potential liability to challenge the determinations made in the audits.[5]

Defendants have moved to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the Court lacks subject matter jurisdiction over this action and that the limitations period in 28 U.S.C. § 2401(a) has expired.[6]

## II.

### *SUBJECT MATTER JURISDICTION*

Defendant's primary argument for dismissal is, in essence, that the Court lacks subject matter jurisdiction under the case or controversy clause of Article III of the Constitution. A challenge to the court's subject matter jurisdiction under Rule 12(b)(1) may rely on affidavits or any other evidence properly before the court. *See Dreier v. United States*, 106 F.3d 844 (1996). The burden

---

5. On the basis of these alleged statutory and constitutional shortcomings, Plaintiffs seek the following relief: (1) a declaratory judgment that the imposition of allegedly unauthorized or retroactive documentation requirements violates the notice and comment provisions of the APA and the Medicare Act, and is a denial of due process if used as a basis for recoupment or assessment of damages or penalties; (2) a declaratory judgment regarding the correct documentation standard for reimbursement claims submitted by attending physicians requires only a countersignature; (3) a declaratory judgment that it is a violation of due process to obtain payment of damages or penalties for claims covering a five-year period based on statistical projections from a small sample; (4) a declaratory judgment that Defendant's failure to allow proof regarding Medicare billings violates due process; (5) a declaratory judgment that Defendant's use of informal interpretive rules as a basis for obtaining payments or assessing damages or penalties is a violation of due process; (6) a declaratory judgment that the PATH audit project is a violation of due process, the APA and the Medicare Act insofar as it seeks to obtain payments

(a) "by threatening ruinous penalties for exercising the right to defend against Defendant's assertions of false or fraudulent claims"; (b) by adopting or applying carrier rules that exceed the standard set forth in the Secretary's own rules, inconsistent with communications from the Health Care Financing Administration ("HCFA"), and inconsistent with the payment practices of carriers; (c) by retroactively applying 1995 evaluation and management documentation rules; and (d) by imposing large-scale damages and penalties on the basis of a small sample of billings; (7) an injunction enjoining the assessment of damages or penalties based on statistical projections of billing errors; (8) a preliminary injunction enjoining Defendant's use of the PATH settlement process until the Court rules on such issues; and (9) an award of the costs of this action and reasonable attorneys' fees. (Compl. at pp. 57–61.)

6. Because the Court finds that Plaintiffs have failed to establish subject matter jurisdiction, the Court does not reach the issue of whether the limitations period has run.

then falls to the party opposing the motion to present evidence establishing that the court does possess subject matter jurisdiction. *See St. Clair v. City of Chico,* 880 F.2d 199 (1989).

Defendant argues that the Court lacks subject matter jurisdiction over this case because, *inter alia,* the actions complained of are not reviewable under the APA and Plaintiffs' claims are not ripe for review.

### A. Review Under the APA

The APA allows suits against the United States only where, among other things, the agency action complained of is "final," 5 U.S.C. § 704, the plaintiff has "no other adequate remedy in a court," *id.,* and the action is not "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). These requirements are "jurisdictional," *Ukiah Valley Medical Center v. FTC,* 911 F.2d 261, 264 n. 1 (9th Cir.1990), and as such they apply regardless of whether the plaintiff claims the agency exceeded its statutory authority, violated the Constitution, or failed to observe procedural law. 5 U.S.C. § 706(2)(B–D). Defendant argues that because Plaintiffs allege neither (a) final agency action nor (b) an action for which there is no other remedy at law, the case must be dismissed in its entirety.

Plaintiffs claim that they are not challenging Defendant's discretion to investigate or prosecute Medicare fraud.[7] Rather, they argue that they are challenging the *authority* of an Inspector General to conduct a particular kind of audit. According to Plaintiffs, their challenge goes to "the authority of the OIG and DOJ to make up their own rules or use carrier as the basis for allegations of false claims based on those audits." (Pl.'s Opp. at 21.)

7. Indeed, Plaintiffs concede that the actions of the Attorney General and the OIG regarding the audits, investigations and any decisions to prosecute under the FCA are *not* reviewable under the APA. (Pl.'s Opp. at 20.)

8. Plaintiffs' assertion that their challenge is reviewable because it turns on the "authority" of the government agents to conduct the audits pursuant to allegedly invalid rules is not convincing. The instant action is no different in substance from what the plaintiffs in *O'Brien* sought:

Plaintiffs rely on *Winters Ranch Partnership v. Viadero,* 123 F.3d 327 (5th Cir.1997), in which the Fifth Circuit reviewed the audit, investigatory and subpoena powers of Inspectors General to determine whether the subpoenas issued to, and challenged by, the plaintiffs were within the Inspector General's statutory authority.

Defendant distinguishes *Winters Ranch* on the grounds that the Court's jurisdiction was premised on the counterclaim filed by the Inspector General seeking *enforcement* of the subpoenas. *Id.* at 328. In support of this theory, Defendant contrasts *Winters Ranch* with *Jerry T. O'Brien, Inc. v. SEC,* 704 F.2d 1065 (9th Cir.1983), *rev'd on other grounds,* 467 U.S. 735, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984), in which the court dismissed a similar suit seeking to enjoin an administrative investigation by the SEC on the grounds that it was being conducted improperly. In *O'Brien,* the Ninth Circuit found that dismissal was proper because neither the investigation nor the issuance of subpoenas constituted "final agency action," *id.* at 1067 n. 6., and because the plaintiffs had "an adequate legal remedy" in that they could assert their defenses in a future action brought by the agency to enforce the subpoena. *Id.* at 1067.

As in *O'Brien,* Plaintiffs in the instant case seek a determination of their rights with respect to a government investigation.[8] In both cases, prerequisites to the court's jurisdiction are "final agency action" and the lack of "an adequate legal remedy." As discussed in greater detail below, neither are present here.

### 1. Final Agency Action

■ Plaintiffs argue that finality under the APA is present here because:

a judicial determination that a government investigation was being conducted improperly. *See* 704 F.2d at 1066.

Moreover, to the extent that Plaintiffs have appropriately characterized their case as turning on the government's authority to conduct an investigation pursuant to certain rules, Plaintiffs' assumptions regarding which rules are being applied and how are too speculative to warrant judicial review at this time. *See* Part II.B, *infra,* discussing ripeness.

[N]o avenue of administrative review exists for any determination made by Defendant in the PATH process .... PATH enforcement consists solely of coerced settlements by OIG and DOJ of alleged FCA violations. It is that signal difference—enforcement by agencies other than the agency whose rules are being challenged—that robs the Defendant's arguments regarding ripeness and finality of any support.

Pl.'s Opp. at 9.

Nevertheless, Plaintiffs, who bear the burden of establishing the Court's jurisdiction, offer no authority in support of their assertion that enforcement by an agency other than HHS is the "signal difference" and disposes of the finality issue. Quite to the contrary, Defendant notes that this argument, if correct, would produce an absurd result: pre-enforcement review would be available for investigations and audits of *all* federal programs *except* those programs administered by DOJ.[9]

In determining finality, the "core" issue "is whether the agency has completed its decisionmaking process"[10] and whether the result of that process is one that will have a " 'sufficiently direct and immediate ... effect on ... day-to-day business.' " *Franklin v. Massachusetts*, 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). In *Franklin*, plaintiffs challenged the Secretary of Commerce's report to the President of the United States after taking the census on the grounds that it would affect the number of representatives their state was allotted in Congress. *Id.* at 792, 112 S.Ct. 2767. In considering the propriety of judicial review under the APA, the Court held that the Secretary's report did not constitute final action because it "has no direct effect on reapportionment until the President takes affirmative steps to calculate and transmit the apportionment to Congress." *Id.* at 799,

112 S.Ct. 2767. Likewise, the use of allegedly invalid rules to audit Plaintiffs is not sufficiently final because it has no direct effect on Plaintiffs unless and until the government seeks to enforce such rules in an FCA action.

In contrast to *Franklin,* the Court in *Abbott Labs* found that the action complained of *was* sufficiently final for judicial review. In *Abbott Labs,* the plaintiffs were compelled to apply particular labels to their products and advertisements under threat of criminal sanction. *Id.* at 138, 87 S.Ct. 1507. Here, Plaintiffs rely on *Abbott Labs* for the assertion that the Supreme Court favors jurisdiction for suits seeking pre-enforcement relief. As Plaintiffs explain it, the Court found sufficient finality for judicial review "on the grounds that the rules required the regulated parties either to *change their behavior* or risk exposure to an enforcement action." (Pl.'s Opp. at 12) (emphasis added).

Although the instant case also involves the threat of enforcement actions and sanctions, it differs from *Abbott Labs* in at least one crucial respect: Plaintiffs do not assert that the rules require them to "change their behavior" or alter any of their *current* practices. Rather, the hospitals fear that the allegedly invalid rules will be applied to their *past* billing and coding practices. The application of allegedly invalid rules to review *past* practices does not have a direct effect on the day-to-day operations of any of the Plaintiffs.

Plaintiffs argue in addition that the "direct and immediate effect" they face is that "Defendant is in the process of inflicting injury on the declaratory relief Plaintiffs through efforts to coerce multimillion dollar settlements for alleged violations of invalid and inapplicable rules." (Pl.'s Opp. at 10.) Even if efforts to "coerce" settlements may be characterized as having a direct effect on day-to-day operations, this alleged injury does not occur until Defendant makes a settlement offer based on alleged violations of

---

**9.** Although it did not directly address the issue of finality, Plaintiffs' position is undercut by *Ohio Hospital Ass'n v. Shalala,* 978 F.Supp. 735 (N.D.Ohio 1997), in which the court dismissed for lack of jurisdiction a suit seeking to block the Attorney General from enforcing allegedly invalid rules adopted by the Secretary of HHS.

**10.** As discussed *infra* at Part II.B (regarding ripeness), the government has not yet completed its decisionmaking process: whether and how the challenged rules will be applied in audits will remain unclear until the government such time as the government should file any FCA actions.

the Medicare Act actionable under the FCA. At such time, as discussed in the following section, Plaintiffs have an adequate legal remedy in that they are free to reject settlement and litigate the propriety of Defendant's action.[11]

### 2. Adequate Alternative Legal Remedy

■ Even if Defendant's action is sufficiently final, Plaintiffs have not established that they have "no other adequate remedy in a court," 5 U.S.C. § 704, such that jurisdiction is proper under the APA or for any equitable relief. Indeed, Plaintiffs do have such a remedy: they may obtain judicial review by defending a prosecution under the FCA, if Defendant should decide to pursue one. *See Ohio Hospital Ass'n v. Shalala,* 978 F.Supp. 735, 742 & n. 9 (N.D.Ohio 1997).

In *Ohio Hospital,* two hospital associations (the "associations") sued for declaratory and injunctive relief, claiming that the Secretary of HHS was improperly and retroactively enforcing new billing standards with respect to reimbursement for certain medical laboratory tests. *Id.* at 736. The associations sought to enjoin the Secretary from continuing the enforcement and for declaratory relief to the effect that the new standards violated the APA and the Medicare Act, violated Plaintiffs' Fifth Amendment due process rights, and therefore could not be used to establish liability under the FCA. *Id.* Despite concern over the investigative tactics of the Secretary and the Attorney General, the court dismissed the case for lack of subject matter jurisdiction. *Id.* at 738.

Among other things, the *Ohio Hospital* court found that the associations had an adequate alternative legal remedy. They could challenge the government's actions by defending an FCA action or challenging an administrative recoupment action:

> [Plaintiffs] could eventually obtain judicial review by 'calling the Secretary's bluff,' as follows: (1) refusing to settle to avoid prosecution; (2) presenting their defense to a False Claims Act lawsuit; and (3) winning that lawsuit based on lack of scienter, as

they allege they would. This course of action would force the Secretary to file an administrative recoupment action, or forego reclamation of her 'excessive reimbursements.' In the end, the hospitals would either avoid recoupment, or be in a position to obtain judicial review of a recoupment decision, and the policy underlying it. *Id.*

While arguably a harsh remedy, Plaintiffs' appropriate avenue for judicial review in this case, as well, is to defend an action under the FCA or to challenge an administrative recoupment proceeding. As discussed in the ripeness section below, Plaintiffs' claims rest on numerous assumptions and questions of fact that are more appropriately resolved in an as-applied challenge, as opposed to a pre-enforcement opinion based on hypothetical future events.

### B. Ripeness

■ Even if Plaintiffs' claims are otherwise subject to judicial review, the claims are not sufficiently ripe to warrant adjudication at this time. Plaintiffs essentially are asking this Court to render an advisory opinion so that they may be better able to gauge their potential exposure under an FCA prosecution or an administrative recoupment action. Because it is unclear to what extent, if at all, Defendant will rely on the allegedly impermissible rules as the basis for asserting such claims, Plaintiffs' cause of action is not yet ripe for judicial review.

In a very recent Supreme Court case, the State of Texas sought a declaratory judgment that the appointment of special masters to oversee school districts would not fall within the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. *Texas v. United States,* 523 U.S. 296, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998). The court, in a unanimous opinion, held that the state's claim was not ripe for adjudication.

11. Plaintiffs also argue that sufficient finality is established under *Lujan v. National Wildlife Federation,* 497 U.S. 871, 891, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), because Defendant's action "threatens to harm" Plaintiffs. Again, the "threat" Plaintiffs articulate is having to choose

between settlement and prosecution. Neither a voluntary settlement, nor the *filing* of a lawsuit constitutes a cognizable legal harm. *See* Part II.A.2, *infra* (discussing Plaintiffs' adequate legal remedy).

A claim is not ripe for review if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 118 S.Ct. 1257, 1260, 140 L.Ed.2d 406 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (internal quotes and citation omitted)). In *Texas,* the Court found that the appointment of a special master—the action complained of—was contingent upon a number of statutory prerequisites as well as factors within the State Commissioner of Education's discretion. *Id.*

Likewise, the action complained of here—that the government may use allegedly invalid rules as the basis for obtaining damages or imposing penalties—is equally contingent. First, Plaintiffs operate under the assumption that the Inspector General will find evidence in the PATH audit process that indicates possible improper billing under the Medicare Act. Second, they assume that the Inspector General will refer the results of a PATH audit to either the Attorney General or the Secretary. Third, they assume that the Secretary or the Attorney General will choose, in their discretion, to pursue an action under the FCA or the Medicare recoupment process. Finally, and most importantly, Plaintiffs assume such an action would be premised on one of the alternative legal theories upon which they are requesting declaratory judgments from this Court.

Even if the application of the challenged rules were more certain, Plaintiffs' claims still would not be ripe for review. To determine ripeness, the Court must also examine "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Texas,* 523 U.S. 296, 118 S.Ct. 1257, 1260, 140 L.Ed.2d 406, (quoting *Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. 1507). In addition to the reasons stated above, agency action is not fit for judicial decision if it is unclear at this time whether the government "intend[s] to be bound" by its currently held view in the final decisionmaking process. *Municipality of*

*Anchorage v. United States,* 980 F.2d 1320, 1325 (9th Cir.1992).

Here, Plaintiffs are unsure exactly what the government's currently held view is, let alone whether the government intends to be bound by it in the final decisionmaking process. Plaintiffs are unable to assert a single theory upon which they seek review of either of their major claims. With respect to the upcoding issue, they ask the Court to rule on whether the E & M guidelines published in 1995 may be applied retroactively (Compl. at ¶¶ 39–44, 53, 75–76), whether the use of the codes that were published in 1992 is mandatory or optional (Pl.'s Opp. at 20); *and* whether the codes should be characterized as a "documentation requirement." *Id.* With respect to the personal-direction issue, Plaintiffs ask the Court to rule on whether the regulations that took effect on July 1, 1996, 42 C.F.R. § 415.172(a), may be applied retroactively, *and* whether the regulations that were in effect from January 1, 1992 to June 30, 1996, 42 C.F.R. § 405.521(b)(1) were applied erroneously. (Compl. at ¶¶ 72–73.)

Thus, Plaintiffs seek declaratory relief expansive enough to cover a variety of possible contingencies, none of which is sufficiently certain to warrant judicial intervention at this time. Resolution of the issues presented will be "better grasped in light of a particular application." *Texas,* 523 U.S. 296, 118 S.Ct. 1257, 1260. Should the government actually rely on the rules which Plaintiffs seek to challenge, and should it do so in one of the manners which Plaintiffs now anticipate, Plaintiffs will then have every opportunity to raise their objections and obtain judicial review.

Finally, as for the hardship to the parties of withholding judicial review, Plaintiffs argue that "the challenged rules expose the Non–Association Plaintiffs to substantial audit expenses, damages, penalties and possible criminal prosecution." (Pl.'s Opp. at 13.) [12] The Court recognizes that Plaintiffs may face the unsavory choice of settling or risking prosecution in the absence of declaratory and injunctive relief. The Court does not relish

---

**12.** The Court does not consider any alleged hardship that relates to the expense of the audits themselves because under the PATH initiative the Inspector General assumes the costs of the audits unless the hospital *chooses* instead to hire an

independent reviewer to conduct a "self-audit." The authority of the Inspector General to conduct audits, of course, is well established. *See* 5 U.S.C.App. 3, §§ 4(a)(1), 2(1).

the prospect, as Plaintiffs portray it, of the government using strong-arm negotiating tactics to extort monumental settlements.

Nevertheless, as discussed earlier,[13] Plaintiffs have failed to establish that the action complained of has a "direct effect" on the conduct of their "day-to-day business." *Abbott Labs.*, 387 U.S. at 152, 87 S.Ct. 1507. Accordingly, while a threat of hardship is present here, it is not the type of threat that *Abbott Labs* recognized as being justiciable: Plaintiffs have not established a threat to their ongoing operations, only a threat that certain past practices will subject them to enforcement action. This is not sufficient to circumvent the ripeness hurdle.

For the foregoing reasons, Plaintiffs have failed to establish subject matter jurisdiction and Defendant's motion to dismiss is therefore granted.

**IT IS SO ORDERED.**