Columbia v. Gregory, et al.          08-CV-98-JD    09/09/08
                  UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Cindy Columbia


        v.                            Civil No. 08-cv-98-JD
                                      Opinion No. 2008 DNH 167

John B. Gregory, D.P.M., and
Active Ankle & Foot Center, P.L.L.C.


                              O R D E R


        Cindy Columbia, who is deaf, filed suit against John B.

Gregory, D.P.M., and Active Ankle & Foot Center, P.L.L.C.,

alleging violations of Title III of the Americans with

Disabilities Act ("ADA") and Section 504 of the Rehabilitation

Act of 1973.  Columbia alleges that when she sought treatment at

the Center, the Center and Gregory provided an American Sign

Language ("ASL") interpreter for one visit but refused to provide

an interpreter thereafter and then refused to treat her.

Columbia seeks a declaration that Gregory and the Center violated

the ADA and Section 504, an injunction to require Gregory and the

Center to treat her and to provide ASL interpreter services, and

compensatory damages.

        Instead of filing an answer, the defendants filed

"Defendants' Motion To Dismiss and/or Motion for Summary

Judgment."  An ECF filing error was docketed, noting that the

defendants had improperly combined multiple motions and that the motion was accepted as a motion to dismiss. Columbia filed an objection and an assented-to motion for clarification as to whether the defendants' motion was to be treated as a motion to dismiss or a motion for summary judgment. The court granted Columbia's motion for clarification and converted the defendants' motion to a motion for summary judgment because it relied on materials extrinsic to the complaint. Columbia was given an opportunity to respond to the motion as one for summary judgment, and she has now filed an objection.

### Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To avoid summary judgment, an opposing party must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

2

256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

## Background

Columbia lives in Claremont, New Hampshire. Because of her deafness, Columbia's primary language is ASL. She has difficulty communicating in writing. Gregory is a Doctor of Podiatric Medicine who specializes in ankle and foot surgery. He is in private practice at the Center, with offices in Claremont and Lebanon, New Hampshire.

In July of 2007, Columbia made an appointment with Gregory because of a painful bone spur on her heel. No ASL interpreter was present during the first appointment, and because of the difficulties in communication, they scheduled a second appointment on August 8, 2007, with an ASL interpreter present. They agreed that surgery was necessary, which was scheduled for October 25, 2007.

On October 16, Columbia and her husband went to the Center because she had questions about the preoperative instructions. She was handed a letter, dated October 12, 2007, from Gregory in which he said that an ASL interpreter would only be present if there were a complication that required more than ordinary postoperative care and that otherwise communication could be

3

accomplished in writing and through family members. He stated that if she agreed, he would mail her detailed written postoperative descriptions but if she disagreed, he would refer her to a physician at Dartmouth Medical Center.

Columbia sought help from the Disabilities Rights Center ("DRC"). An attorney from the DRC sent Gregory a letter on October 24, 2007, stating that Columbia was a qualified individual with a disability under Title III of the ADA and Section 504 of the Rehabilitation Act and that those statutes required that a qualified sign language interpreter be provided when necessary to allow her to communicate effectively. The same day, Gregory sent Columbia a letter "to clarify the termination of our patient-doctor relationship." He explained that he was cancelling Columbia's surgery "because there has been absolutely no clear communication returned from your end." He recommended alternative physicians to treat her, offered to contact them on her behalf, and said that he would forward her medical records wherever necessary.

Columbia, who is represented by an attorney from the DRC, filed suit on March 14, 2008. Thereafter, Gregory resumed treatment of Columbia, with an ASL interpreter present during all visits and treatment. This summer, Columbia underwent surgery for the bone spur and is now in postoperative care. Gregory

4

states in his affidavit that he "agreed to reinstate the doctor-patient relationship with Plaintiff, begin treating her again, and provide an ASL certified interpreter to Plaintiff during any scheduled medical visits with me where treatment will be discussed or provided."

Discussion

Gregory and the Center move for summary judgment, contending that Columbia's ADA claim is moot and that they were not required to provide an ASL interpreter under Section 504 because the Center employs fewer than fifteen people. Columbia objects, contending that the defendants' decision to treat her does not ensure their future conduct and that Section 504 applies to the defendants.

A. Is the ADA Claim Moot?

Gregory and the Center contend that Columbia's claim for injunctive relief under Title III of the ADA is moot because they are providing the treatment she needs and have and will continue to provide the services of an ASL interpreter during her treatment. As a result, they argue, Columbia has achieved what she sought in bringing her ADA claim. Columbia counters that although she is now being treated by Gregory and the Center with

5

an ASL interpreter, nothing would prevent the defendants from denying her an interpreter or denying her treatment altogether in the future.

In general, "voluntary cessation of allegedly illegal conduct . . . does not make the case moot" because "[t]he defendant is free to return to his old ways." United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953). In addition, a public interest exists "in having the legality of the practices settled." Id. Therefore, voluntary cessation will render a dispute moot only when "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Los Angeles County v. Davis, 440 U.S. 625, 631 (1979) (internal quotation marks omitted). The defendant bears a "formidable burden to show that the challenged conduct could not reasonably be expected to recur." Mendez-Soto v. Rodriguez, 448 F.3d 12, 15 (1st Cir. 2006).

Columbia states that she is still receiving treatment from Gregory at the Center, that she anticipates treatment to continue, and that she may require other treatment there for herself or family members in the future. Although Gregory and the Center are now providing an ASL interpreter for Columbia,

6

nothing has occurred that would prevent them from deciding not to do so for future appointments. Therefore, the defendants have not shown that Columbia's ADA claim is moot.

Although the claim has not been shown to be moot, there appears to be little or no disagreement about the outcome. The court previously directed counsel to use their best efforts to resolve this case before expending the parties' and the court's resources on further litigation. The issue of providing ASL interpreters for continuing or future treatment of Columbia at the Center can and should be addressed through settlement discussions.

B.  Rehabilitation Act

The defendants contend that they cannot be held liable under Section 504 because they employ fewer than fifteen people.[1]  See 45 C.F.R. § 84.52(d)(1).  Columbia disagrees.

Section 504 of the Rehabilitation Act prohibits discrimination as follows:

> No otherwise qualified individual with a disability in
> the United States, as defined in section 705(2) of this
> title, shall, solely by reason of her or his

---

[1]The defendants do not dispute that they receive federal financial assistance from the Department of Health and Human Services or that Columbia is a qualified individual with a disability within the meaning of Section 504.

disability, be excluded from the participation in, be
denied the benefits of, or be subjected to
discrimination under any program or activity receiving
Federal financial assistance or under any program or
activity conducted by any Executive agency . . . .

29 U.S.C. § 794(a). The Office of Civil Rights ("OCR") of the
Department of Health and Human Services ("HHS") is authorized to
accept and investigate complaints of violations of Section 504 by
entities receiving financial assistance from that department. 45
C.F.R. § 84.6. Section 504 also includes an implied private
cause of action with remedies, procedures, and rights that are
coextensive with those under Title VI of the Civil Rights Act of
1864. Barnes v. Gorman, 536 U.S. 181, 185 (2002).

Section 794(a) authorizes federal funding agencies to
promulgate necessary regulations for implementing the
Rehabilitation Act. While an implementing regulation cannot
create a private cause of action, a regulation that effectuates
or interprets rights created by the statute is enforceable
through a private action under the statute. Iverson v. City of
Boston, 452 F.3d 94, 100-101 (1st Cir. 2006) (interpreting
Alexander v. Sandoval, 532 U.S. 275, 284-91 (2001)). A
regulation is not privately enforceable if it "either forbids
conduct that the statute allows or imposes an obligation beyond
what the statute mandates." Id. at 101. In addition, a
regulation that merely states a general policy and does not

implement particular rights or obligations is not privately enforceable.  <u>Three Rivers Ctr. for Indep. Living, Inc. v. Housing Auth. of Pittsburgh</u>, 382 F.3d 412, 430 (3d Cir. 2004).

The implementing regulations promulgated under the Rehabilitation Act by HHS include a requirement that "[a] recipient to which this subpart applies that employs fifteen or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."[2]  45 C.F.R. § 84.52(d)(1).  Courts have enforced § 84.52(d)(1) to require entities who employ more than fifteen people to provide auxiliary aids under Section 504.  <u>See</u> <u>Martin v. Ind. Heart Hosp., LLC</u>, 2007 SL 1498882, at *4 (S.D. Ind. 2007); <u>Estate of Alcalde v. Deaton Specialty Hosp. Home, Inc.</u>, 133 F. Supp. 2d 702, 707 (D. Md. 2001); <u>Davis v. Flexman</u>, 109 F. Supp. 2d 776, 787 & n.5 (S.D. Ohio 1999).  The First Circuit enforced a similar regulation promulgated by the Department of Justice under Section 504, requiring recipients who employ fifteen or more persons to provide auxiliary aids to handicapped persons, 28 C.F.R. § 42.503(f).  <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 120-21 (1st Cir. 2003).

--------

[2]Auxiliary aids include interpreters for persons with impaired hearing.  45 C.F.R. § 84.52(d)(3).

9

In addition, § 84,52(d)(2) states that HHS "may require recipients with fewer than fifteen employees to provide auxiliary aids where the provision of aids would not significantly impair the ability of the recipient to provide its benefits or services." As authorized by § 84.52(d)(2), HHS through its Director of OCR announced in a notice dated December 6, 2000, that, effective immediately:

> the Office for Civil Rights (OCR) will require recipients with fewer than 15 employees to provide auxiliary aids where the provision of aids would not significantly impair the ability of the recipient to provide its benefits or services, and will investigate complaints against health and social services providers with fewer than 15 employees for failure to provide auxiliary aids to individuals with disabilities under Section 504.

65 Fed. Reg. 79368 (2000). The notice explained that "in the interest of uniformity and consistent administration of law, Section 504's auxiliary aids requirement should be applied to covered entities with fewer than 15 employees, as is the case under the Americans with Disabilities Act of 1990." Id. It also explained that OCR would enforce Section 504 with the responsibilities provided by the notice "through procedures provided for in the Section 504 regulations." Id. at 79369.

The December 6 notice does not explain its scope, and no court appears to have addressed the legal effect of the December

10

6, 2000, notice.[3]  Gregory and the Center argue that the notice may only be enforced by the OCR, and they state that the OCR has not specifically required them to provide auxiliary aids. Columbia insists that the notice imposes regulatory obligations on small providers, like Gregory and the Center, which can be enforced under Section 504 in a private cause of action.[4]

As presented, the issue appears to be whether the December 6 notice constitutes a binding legislative rule or merely a policy statement by HHS.[5]  See Gen. Elec. Co. v. E.P.A., 290 F.3d 377, 382 (D.C. Cir. 2002).  That determination requires consideration of factors that have not been briefed here.  See Gen. Motors

---

[3]Columbia interprets Davis, 109 F. Supp. 2d at 187-788, to hold that "the only thing preventing a claim from being brought under 84.52(d)(2) was notice from the Director."  Instead, the court stated in Davis that under § 84.52(d) the defendants were required to provide auxiliary aids if the clinic employed more than fifteen people and would be required to provide auxiliary aids if it employed fewer than fifteen people only "if the Department of Health and Human Services specifically required the Clinic to provide such aids."  Id.

[4]Columbia also minimizes the impact of the fifteen-employee requirement, contending it applies only to one of her three claims under Section 504.

[5]The defendants appear to concede that the December 6 notice provides a binding rule that can be enforced by HHS's OCR but argue that the rule cannot be enforced through a private cause of action.  They offer no authority to support their theory that a binding rule can only be enforced by the agency and not through a private cause of action under Section 504.

11

Corp. v. E.P.A., 363 F.3d 442, 448 (D.C. Cir. 2004); Elizabeth Blackwell Health Ctr. for Women v. Knoll, 51 F.3d 170, 188-89 (3d Cir. 1995); Municipality of Anchorage v. United States, 980 F.2d 1320, 1324-25 (9th Cir. 1992). The court declines to engage in the complex analysis necessary to determine the effect of the December 6 notice in the absence of adequate briefing.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 6) is denied, without deciding the issue of whether the December 6, 2000, notice is enforceable through a private cause of action. That issue may be addressed, if necessary, through a properly supported motion for summary judgment.

The defendants shall file their answer within **twenty days** from the date of this order.

This is an appropriate time for the parties to engage in serious and good faith efforts to settle this case. To that end, the parties may negotiate privately or use the mediation services offered by the court. The parties, jointly, shall notify the

12

court about the status of their settlement efforts **on or before October 8, 2008.**

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

September 9, 2008

cc:  Catharine A. Mallison, Esquire
     Stephen J. Soule, Esquire

13